IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| JOSEPH D. BECKHAM, | ) | CASE NO. 5:15 CV 1928 |
| | ) | |
| Plaintiff, | ) | |
| | ) | MAGISTRATE JUDGE |
| v. | ) | WILLIAM H. BAUGHMAN, JR. |
| | ) | |
| COMMISSIONER OF SOCIAL | ) | |
| SECURITY, | ) | **MEMORANDUM OPINION AND** |
| | ) | **ORDER** |
| Defendant. | ) | |

## Introduction

Before me[1] is an action by Joseph Daniel Beckham under 42 U.S.C. § 405(g) for

judicial review of the final decision of the Commissioner of Social Security denying his

application for disability insurance benefits ("DIB").[2] The Commissioner has answered[3] and

filed the transcript of the administrative record.[4] Under my initial[5] and procedural[6] orders,

---

[1] ECF # 21. The parties have consented to my exercise of jurisdiction.

[2] ECF # 1.

[3] ECF # 10.

[4] ECF # 11.

[5] ECF # 7.

[6] ECF # 12.

the parties have briefed their positions[7] and filed supplemental charts[8] and the fact sheet.[9] They have participated in a telephonic oral argument.[10]

## Facts

### A.    Background facts and decision of the Administrative Law Judge ("ALJ")

Beckham who was 54 years old at the time of the administrative hearing,[11] graduated high school[12] and lives alone.[13]  He was last employed in 2012 as a dishwasher at Acme Fresh Market.[14] His past relevant work history includes working as a machinist, garment sorter, stocker, and general maintenance worker.[15]

The ALJ, whose decision became the final decision of the Commissioner, found that Beckham had the following severe impairments: dysthymic disorder, panic disorder,

---

[7] ECF # 18 (Commissioner's brief); ECF # 15 (Beckham's brief).

[8] ECF # 18-1 (Commissioner's charts); ECF # 15-2 thru 15-5 (Beckham's charts).

[9] ECF # 15-1 (Beckham's fact sheet).

[10] ECF # 23.

[11] ECF # 11, Transcript ("Tr.") at 33.

[12] *Id.* at 25.

[13] *Id.* at 41.

[14] *Id*. at 75.

[15] *Id*. at 76-77.

obsessive compulsive disorder (OCD), and generalized anxiety disorder, with depression (20 CFR 404.1520(c).[16]

After concluding that the relevant impairments did not meet or equal a listing, the ALJ made the following finding regarding Beckham's residual functional capacity ("RFC"):

> After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: the claimant must avoid the use of moving machinery, commercial driving, and unprotected heights. The claimant can perform simple, routine, repetitive tasks. The environment must be free of fast-paced production requirements and routine work place changes. The claimant can occasionally interact with the public and co-workers. The claimant can have superficial contact, defined as no negotiation, or confrontation with others.[17]

Relying on that residual functional capacity, the ALJ found Beckham capable of his past relevant work as dishwasher, garment sorter, general maintenance, stores laborer, and book stocker.[18]

Based on an answer to a hypothetical question posed to the vocational expert at the hearing setting forth the residual functional capacity finding quoted above, the ALJ determined that a significant number of jobs existed locally and nationally that Beckham could perform.[19] The ALJ, therefore, found Beckham not under a disability.[20]

---

[16] *Id.* at 20.

[17] *Id.* at 22.

[18] *Id.* at 24.

[19] *Id.* at 24-25.

[20] *Id.* at 26.

**B.    Issues on judicial review**

Beckham asks for reversal of the Commissioner's decision on the ground that it does not have the support of substantial evidence in the administrative record. Specifically, Beckham presents the following issues for judicial review:

- Whether the ALJ applied improper standards of law in his decision and the decision is not supported by substantial evidence regarding the medical source statements of Dr. Villalba in violation of the treating physician opinion rule.[21]

- Whether the ALJ's erred in his evaluation of Beckham's isolated activities of daily living.[22]

- Whether the ALJ's properly evaluated the hypothetical questions to the VE contained all of Mr. Beckham's limitations.[23]

- Whether the appeals council refusal to admit or consider the FDA study regarding Xanax and that their decision lacks the support of substantial evidence.[24]

For the reasons that follow, I will conclude that the ALJ's finding of no disability is not supported by substantial evidence and, therefore, must be reversed and remanded for further administrative proceedings.

-----

[21] ECF # 15 at 13.

[22] *Id*. at 18.

[23] *Id*. at 20.

[24] *Id*. at 2-3.

# Analysis

## A.    Standards of review

### 1.    *Substantial evidence*

The Sixth Circuit in *Buxton v. Halter* reemphasized the standard of review applicable

to decisions of the ALJs in disability cases:

> Congress has provided for federal court review of Social Security administrative decisions. 42 U.S.C. § 405(g). However, the scope of review is limited under 42 U.S.C. § 405(g): "The findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive...." In other words, on review of the Commissioner's decision that claimant is not totally disabled within the meaning of the Social Security Act, the only issue reviewable by this court is whether the decision is supported by substantial evidence. Substantial evidence is " 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' "

> The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion. This is so because there is a "zone of choice" within which the Commissioner can act, without the fear of court interference.[25]

Viewed in the context of a jury trial, all that is necessary to affirm is that reasonable minds

could reach different conclusions on the evidence. If such is the case, the Commissioner

---

[25] *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001) (citations omitted).

survives "a directed verdict" and wins.[26] The court may not disturb the Commissioner's findings, even if the preponderance of the evidence favors the claimant.[27]

I will review the findings of the ALJ at issue here consistent with that deferential standard.

### 2. *Treating physician rule and good reasons requirement*

The regulations of the Social Security Administration require the Commissioner to give more weight to opinions of treating sources than to those of non-treating sources under appropriate circumstances.

> Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations.[28]

If such opinions are "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and "not inconsistent with the other substantial evidence in [the] case record," then they must receive "controlling" weight.[29]

––––––––––––––––––––

[26] *LeMaster v. Sec'y of Health & Human Servs.*, 802 F.2d 839, 840 (6th Cir. 1986); *Tucker v. Comm'r of Soc. Sec.*, No. 3:06CV403, 2008 WL 399573, at *6 (S.D. Ohio Feb. 12, 2008).

[27] *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007).

[28] 20 C.F.R. § 404.1527(d)(2).

[29] *Id.*

The ALJ has the ultimate responsibility for determining whether a claimant is disabled.[30] Conclusory statements by the treating source that the claimant is disabled are not entitled to deference under the regulation.[31]

The regulation does cover treating source opinions as to a claimant's exertional limitations and work-related capacity in light of those limitations.[32] Although the treating source's report need not contain all the supporting evidence to warrant the assignment of controlling weight to it,[33] nevertheless, it must be "well-supported by medically acceptable clinical and laboratory diagnostic techniques" to receive such weight.[34] In deciding if such supporting evidence exists, the Court will review the administrative record as a whole and may rely on evidence not cited by the ALJ.[35]

In *Wilson v. Commissioner of Social Security*,[36] the Sixth Circuit discussed the treating source rule in the regulations with particular emphasis on the requirement that the agency "give good reasons" for not affording controlling weight to a treating physician's opinion in

---

[30] *Schuler v. Comm'r of Soc. Sec.*, 109 F. App'x 97, 101 (6th Cir. 2004).

[31] *Id.*

[32] *Swain v. Comm'r of Soc. Sec.*, 297 F. Supp. 2d 986, 991 (N.D. Ohio 2003), citing *Green-Younger v. Barnhart*, 335 F.3d 99, 106-07 (2nd Cir. 2003).

[33] *Garner v. Heckler*, 745 F.2d 383, 391 (6th Cir. 1984).

[34] *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 536 (6th Cir. 2001).

[35] *Id.* at 535.

[36] *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541 (6th Cir. 2004).

-7-

the context of a disability determination.[37] The court noted that the regulation expressly contains a "good reasons" requirement.[38] The court stated that to meet this obligation to give good reasons for discounting a treating source's opinion, the ALJ must do the following:

- State that the opinion is not supported by medically acceptable clinical and laboratory techniques or is inconsistent with other evidence in the case record.

- Identify evidence supporting such finding.

- Explain the application of the factors listed in 20 C.F.R. § 404.1527(d)(2) to determine the weight that should be given to the treating source's opinion.[39]

The court went on to hold that the failure to articulate good reasons for discounting the treating source's opinion is not harmless error.[40] It drew a distinction between a regulation that bestows procedural benefits upon a party and one promulgated for the orderly transaction of the agency's business.[41] The former confers a substantial, procedural right on the party invoking it that cannot be set aside for harmless error.[42] It concluded that the requirement in § 1527(d)(2) for articulation of good reasons for not giving controlling weight

---

[37] *Id.* at 544.

[38] *Id.*, citing and quoting 20 C.F.R. § 404.1527(d)(2).

[39] *Id.* at 546.

[40] *Id.*

[41] *Id.*

[42] *Id.*

to a treating physician's opinion created a substantial right exempt from the harmless error rule.[43]

The Sixth Circuit in *Gayheart v. Commissioner of Social Security*[44] recently emphasized that the regulations require two distinct analyses, applying two separate standards, in assessing the opinions of treating sources.[45] This does not represent a new interpretation of the treating physician rule. Rather it reinforces and underscores what that court had previously said in cases such as *Rogers v. Commissioner of Social Security*,[46] *Blakley v. Commissioner of Social Security*,[47] and *Hensley v. Astrue*.[48]

As explained in *Gayheart*, the ALJ must first consider if the treating source's opinion should receive controlling weight.[49] The opinion must receive controlling weight if (1) well-supported by clinical and laboratory diagnostic techniques and (2) not inconsistent with other substantial evidence in the administrative record.[50] These factors are expressly set out in 20 C.F.R. §§ 404.1527(d)(2). Only if the ALJ decides not to give the treating source's

---

[43] *Id.*

[44] *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365 (6th Cir. 2013).

[45] *Id.* at 375-76.

[46] *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 242 (6th Cir. 2007).

[47] *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406-07 (6th Cir. 2009).

[48] *Hensley v. Astrue*, 573 F.3d 263, 266 (6th Cir. 2009).

[49] *Gayheart*, 710 F.3d at 376.

[50] *Id.*

opinion controlling weight will the analysis proceed to what weight the opinion should receive based on the factors set forth in 20 C.F.R. §§ 404.1527(d)(2)(i)-(ii), (3)-(6).[51] The treating source's non-controlling status notwithstanding, "there remains a presumption, albeit a rebuttable one, that the treating physician is entitled to great deference."[52]

The court in *Gayheart* cautioned against collapsing these two distinct analyses into one.[53] The ALJ in *Gayheart* made no finding as to controlling weight and did not apply the standards for controlling weight set out in the regulation.[54] Rather, the ALJ merely assigned the opinion of the treating physician little weight and explained that finding by the secondary criteria set out in §§ 1527(d)(i)-(ii), (3)-(6) of the regulations,[55] specifically the frequency of the psychiatrist's treatment of the claimant and internal inconsistencies between the opinions and the treatment reports.[56] The court concluded that the ALJ failed to provide "good reasons" for not giving the treating source's opinion controlling weight.[57]

> But the ALJ did not provide "good reasons" for why Dr. Onady's opinions fail to meet either prong of this test.

---

[51] *Id.*

[52] *Rogers*, 486 F.3d at 242.

[53] *Gayheart*, 710 F.3d at 376.

[54] *Id.*

[55] *Id.*

[56] *Id.*

[57] *Id.*

To be sure, the ALJ discusses the frequency and nature of Dr. Onady's treatment relationship with Gayheart, as well as alleged internal inconsistencies between the doctor's opinions and portions of her reports. But these factors are properly applied only after the ALJ has determined that a treating-source opinion will not be given controlling weight.[58]

In a nutshell, the *Wilson/Gayheart* line of cases interpreting the Commissioner's regulations recognizes a rebuttable presumption that a treating source's opinion should receive controlling weight.[59] The ALJ must assign specific weight to the opinion of each treating source and, if the weight assigned is not controlling, then give good reasons for not giving those opinions controlling weight.[60] In articulating good reasons for assigning weight other than controlling, the ALJ must do more than state that the opinion of the treating physician disagrees with the opinion of a non-treating physician[61] or that objective medical evidence does not support that opinion.[62]

The failure of an ALJ to follow the procedural rules for assigning weight to the opinions of treating sources and the giving of good reason for the weight assigned denotes

---

[58] *Id.*

[59] *Rogers*, 486 F.3d 234 at 242.

[60] *Blakley*, 581 F.3d at 406-07.

[61] *Hensley*, 573 F.3d at 266-67.

[62] *Friend v. Comm'r of Soc. Sec.*, 375 F. App'x 543, 551-52 (6th Cir. 2010).

a lack of substantial evidence even if the decision of the ALJ may be justified based on the record.[63] The Commissioner's *post hoc* arguments on judicial review are immaterial.[64]

Given the significant implications of a failure to properly articulate (*i.e.*, remand mandated by the *Wilson* decision, an ALJ should structure the decision to remove any doubt as to the weight given the treating source's opinion and the reasons for assigning such weight. In a single paragraph the ALJ should state what weight he or she assigns to the treating source's opinion and then discuss the evidence of record supporting that assignment. Where the treating source's opinion does not receive controlling weight, the decision must justify the assignment given in light of the factors set out in §§ 1527(d)(1)-(6).

The Sixth Circuit has identified certain breaches of the *Wilson* rules as grounds for reversal and remand:

- the failure to mention and consider the opinion of a treating source,[65]

- the rejection or discounting of the weight of a treating source without assigning weight,[66]

- the failure to explain how the opinion of a source properly considered as a treating source is weighed (*i.e.*, treating v. examining),[67]

---

[63] *Blakley*, 581 F.3d at 407.

[64] *Wooten v. Astrue*, No. 1:09-cv-981, 2010 WL 184147, at *8 (N.D. Ohio Jan. 14, 2010).

[65] *Blakley*, 581 F.3d at 407-08.

[66] *Id.* at 408.

[67] *Id.*

- the elevation of the opinion of a nonexamining source over that of a treating source if the nonexamining source has not reviewed the opinion of the treating source,[68]

- the rejection of the opinion of a treating source because it conflicts with the opinion of another medical source without an explanation of the reason therefor,[69] and

- the rejection of the opinion of a treating source for inconsistency with other evidence in the record without an explanation of why "the treating physician's conclusion gets the short end of the stick."[70]

The Sixth Circuit in *Blakley*[71] expressed skepticism as to the Commissioner's argument that the error should be viewed as harmless since substantial evidence exists to support the ultimate finding.[72] Specifically, *Blakley* concluded that "even if we were to agree that substantial evidence supports the ALJ's weighing of each of these doctors' opinions, substantial evidence alone does not excuse non-compliance with 20 C.F.R. § 404.1527(d)(2) as harmless error."[73]

In *Cole v. Astrue*,[74] the Sixth Circuit reemphasized that harmless error sufficient to excuse the breach of the treating source rule only exists if the opinion it issues is so patently

---

[68] *Id.* at 409.

[69] *Hensley*, 573 F.3d at 266-67.

[70] *Friend*, 375 F. App'x at 551-52.

[71] *Blakley*, 581 F.3d 399.

[72] *Id.* at 409-10.

[73] *Id.* at 410.

[74] *Cole v. Astrue*, 661 F.3d 931 (6th Cir. 2011).

deficient as to make it incredible, if the Commissioner implicitly adopts the source's opinion or makes findings consistent with it, or if the goal of the treating source regulation is satisfied despite non-compliance.[75]

## B.    Application of standards

Although Beckham raises multiple issues for review, only one issue is dispositive. This case involves a challenge to the weight given to the opinion of Beckham's treating psychiatrist, Dr. Abdon Villaba, M.D., and thus concerns a related question of whether the mental limitations in the RFC - which were not those offered by Dr. Villaba - are supported by substantial evidence.

As summarized by Beckham, he began treatment with Dr. Villaba in July, 2012, and from that time until the date of the hearing in May, 2014, he was seen by Dr. Villaba on 42 occasions.[76] Those visits, which are documented in treatment notes, served as the foundation for two medical source statements from Dr. Villaba - one completed in September, 2012 in response to a questionnaire from a state agency[77] and the second submitted in March, 2014.[78]

In the latter statement Dr. Villaba opined that Beckham had a number of marked or extreme work-related limitations, such as:

---

[75] *Id.* at 940.

[76] ECF # 15 at 5-8 (citing record).

[77] Tr. at 371-72.

[78] *Id*. at 328-30.

- the ability to maintain concentration and attention for extended periods of 2-hour segments;[79]

- the ability to perform activities within a schedule, maintain regular attendance and be punctual within customary tolerances;[80]

- the ability to complete a normal workday and work week without interruptions from psychologically based symptoms and perform at a consistent pace without an unreasonable number and length of rest periods, which requirements are usually restricted;[81]

- the ability to make simple work related decisions;[82]

- the ability to ask simple questions or request assistance;[83]

- the ability to accept instruction and respond appropriately to criticism from supervisors;[84] and

- the ability to respond appropriately to changes in (a routine work) setting.[85]

Dr. Villaba's opinion also stated Beckham had three or more episodes of decompensation within 12 months, each at least 12 weeks long.[86]

---

[79] *Id*. at 328.

[80] *Id*.

[81] *Id.*

[82] *Id*. at 329.

[83] *Id.*

[84] *Id*.

[85] *Id*.

[86] *Id*.

The ALJ noted this functional opinion from Dr. Villaba, but assigned it "little weight," finding that the opinion "is extreme" and that the notation concerning episodes of decompensation "is not accurate at all."[87] The ALJ further stated that Dr. Villaba's treatment notes "are completely inconsistent with this opinion."[88]  In that regard, he cited the fact that the "[t]reatment notes reflect appropriate eye contact and stable or improving condition since June 2013."[89]

By contrast to the weight given to Dr. Villaba's opinion, the ALJ gave "greater weight" to the less restrictive RFC opinion of Dr. Robert Dallara, a state agency consultative psychological examiner, who found that Beckham's impairments were "non-severe."[90]  The ALJ found that this opinion was "consistent with a thorough examination of the claimant and is consistent with the claimant's actual functioning."[91]

Beckham essentially argues that the ALJ's treatment of Dr. Villaba was flawed in two respects: first, in that the ALJ did not give "good reasons" for downgrading Dr. Villaba's opinion and then that the ALJ erred in giving greater weight to the opinion of the one time state consultative examiner.

---

[87] *Id*. at 24.

[88] *Id.*

[89] *Id*.

[90] *Id.*

[91] *Id.*

As to the reasons given for assigning lesser weight to the opinion of Dr. Villaba, first it is noted that those reasons are largely incapable of meaningful judicial review. The general reference to the treatment records being "completely inconsistent" with the opinion does not provide a reviewing court with a clear understanding of just how nearly 40 pages of treatment notes covering 42 visits consist of entirely utterly incompatible observations from the opinion rendered. While, as usual, the Commissioner in his brief attempt to create a plausible *post hoc* statement of facts that might serve to explain the ALJ's decision, I am constrained to consider only the reasons given by the ALJ and not the Commissioner's counsel.

Beckham has specifically detailed excerpts from the notes on each of those 42 visits that make reference to some abnormality in Beckham's mental status.[92] While it may be that these treatment notes do not fully support Beckham's view of his own mental status, those notes are from a treating medical source and must be evaluated by the ALJ according to the applicable rubric. The sweeping statement that these multiple, detailed treatment notes are "completely inconsistent" with the functional opinion paints with too broad a brush and leaves the reviewing court at a loss when attempting to determine if any alleged inconsistencies are more apparent than real. Only by specifying the allegedly inconsistent statements and explaining the inconsistency in terms of other, opposite clinical evidence can the ALJ escape the conclusion that the present effort is vague and conclusory.

---

[92] *See*, ECF # 15 at 5-7 (citing record).

Moreover, the assertion by the ALJ that Dr. Vallaba erred by finding three episodes of decompensation is also incapable of meaningful judicial review.  Beckham has claimed that these episodes can be located in his walking away from jobs due to stress or in the instance of his increasing his medication, and that such behavior is consistent with the definition of decompensation in the regulations.[93]   Because the ALJ made no effort to deal with these examples and then show why they cannot support Dr. Villaba's statement, I find that the ALJ's conclusion in this regard is not supported by a good reason.

Finally, although an ALJ may in some cases give greater weight to the opinion of a one-time examining consultant over that of a long-time treating source, that outcome is not warranted when, as here, the consultative examiner did not review the entire case record as part of formulating his opinion.[94]

### Conclusion

For the reasons stated, I find that the decision of the Commissioner here is not supported by substantial evidence and so must be reversed, and the matter remanded for further proceedings consistent with this opinion.

IT IS SO ORDERED.


Dated: September 26, 2016                          s/ William H. Baughman, Jr.
                                                   United States Magistrate Judge

---

[93] *Id*. at 16-17.

[94] *See, Blakely*, 581 F.3d at 409-10.

-18-